In the Matter of DELMA STUDIOS, INC., et al., Appellants, against ANDREW G. CLAUSEN, JR., et al., Constituting the Board of Education of the City of New York, et al., Respondents.

First Department, July 1, 1954.

*Aaron Benenson* of counsel (*Harold G. Israelson* and *Arnold R. Streit* with him on the brief; *Benenson & Israelson,* attorneys), for appellants.

*Edward J. McLaughlin* of counsel (*Seymour B. Quel* with him on the brief; *Adrian P. Burke, Corporation Counsel,* attorney), for respondents.

BOTEIN, J. Petitioners, who are professional photographers, appeal from an order of Special Term denying their application under article 78 of the Civil Practice Act for an order compelling respondents, the board of education of the City of New York and the superintendent of schools, to refrain from requiring petitioners to bid competitively for contracts to photograph graduates of public schools.

Prior to May 1, 1952, section 90 (subd. 24) of the by-laws of the board of education prohibited canvassing or selling of materials by an outside agency on school premises. For many years this restriction appears to have been enforced more in the breach than in the observance. On May 1, 1952, the by-law was amended to permit arrangements with outside contractors for the sale to pupils of class photographs and other articles in accordance with rules established by the superintendent of schools. At the same time the board of education adopted a set of regulations designed to chart the course of this departure from the previous practice.

A number of abuses had sprung up under the former procedure. Faculty advisors and principals received personal considerations from commercial firms seeking the privilege of selling photographs, class pins and similar articles to the students. Prices charged to the students were excessive and there was no uniformity in prices, extra charges or discounts. Students and parents were subjected to humiliating sales pressures. The regulations under attack here were drawn by the superintendent of schools and adopted by the board of education with a view to correcting these known abuses.

It is the contention of petitioners that the procedure adopted by the superintendent was in violation of the regulations adopted by the board. Regulations 1 and 2 require that arrangements with outside contractors be made under the *direction* of the principals of the various schools; and that provision be made for approval by pupil representatives in any decision affecting the choice of articles or the terms of purchase. It is claimed by petitioners that the superintendent, acting in excess of the authority conferred upon him, by-passed the principals and student representatives, and diverted their functions to the bureau of school supplies. This bureau issued formal invitations to petitioners and other photographers to bid for what are in essence agreements giving them permission to sell photographs at agreed prices and on agreed terms to students.

Petitioners contend that in doing this respondents poached on the preserves of the school principals, since regulation 1 specifies that arrangements with outside contractors were to be made under the direction of the principals. However, it is incredible that in promulgating regulation 1 the board intended to delegate to the principals the exclusive power to direct arrangements with outside contractors — from preliminary invitations and negotiations to contract closing. This was the very procedure that produced the evils and abuses complained of by the superintendent. It must be remembered that regulation 1 was enacted as submitted by the superintendent, without change. To attach this meaning to the regulation would imply that the superintendent, after roundly condemning the practices that had previously existed, submitted a regulation prescribing a continuance of the precise practices that had brought about the abuses of which he complained. The word " direction " is susceptible of comparative shadings, and it would appear that the board did not use it in the same sweeping sense employed by petitioners. The superintendent of school supplies did in fact notify the acceptable contractors to make their arrange-

ments with the various principals. The substantial area of direction thus delegated to the principals seems more in keeping with the sense of regulation 1.

Moreover, a reading of all the regulations and of the minutes of the meeting at which they were adopted indicates that no effort was made to spell out specific techniques and procedures to be followed slavishly by the superintendent. In the regulations it adopted, the board enunciated general principles to be respected by the superintendent, who was charged with administering the new program. Thus, the board's major directive to the superintendent in authorizing this untried program is reflected in the following regulations:

" 4. No personal gain, advantage or benefit shall accrue to any teacher, supervisor or other employee or official of the Board of Education, or to any pupil in the school affected, as a result of such purchase.

" 5. No pupil shall be compelled, directly or indirectly, to purchase any such article against his wishes."

These regulations must be examined in their entire setting (*Matter of New York Ambassador* v. *Board of Stds. & Appeals*, 281 App. Div. 342, affd. 305 N. Y. 791; *Cummings* v. *Board of Educ. of City of N. Y.*, 275 App. Div. 577, affd. 300 N. Y. 611). It must be understood that they were not designed to blueprint precisely nor permanently the methods to be employed. On the contrary, in submitting them to the board, the superintendent said that the regulations were to be established " pending the outcome of further studies which are to be initiated by me." And in writing to petitioners' counsel, the superintendent referred to the first year of operation as " experimental " and said, " I think we all agree that the specifications are not perfect this year, and that a number of bugs will be discovered in the operation of the plan." Also, in his affidavit he stated that " [f]urther modifications of the current procedure may be in order."

It is clear that the board intended merely to outline the procedure for this first year of experiment in the broadest and most elastic of terms and that the superintendent has acted properly within the intent and spirit of the grant of power given to him. True, the bureau of school supplies, and not the principals or faculty advisors, distributed the invitations to bid and functioned in the initial stages of the proposals. This was done to provide safeguards against a repetition of the undesirable practices previously uncovered. The procedures evolved by the superintendent were designed to preserve as much autonomy as possible for the principal and student repre-

sentatives of each school, while procuring preliminary contract commitments so that the contractors authorized to undertake the sale of photographs to students would thereafter deal with them on a fair and uniform basis. As pointed out by respondents, so urgent was the necessity for quickly implementing their program that they used the regular public works proposal and contract forms as a matter of convenience, although in fact a mimeographed proposal was the eventual basis for selection of the successful bidders. Of course, these were not contracts for public works within the purview of section 103 of the General Municipal Law or section 2556 of the Education Law but merely an adaptation of the techniques of public bidding to a preliminary screening of contractors, to insure the integrity of their future dealings with students.

The petitioners' plaint that the superintendent has not afforded local merchants a reasonable opportunity to offer their wares comes with poor grace from these seven petitioners, who allege in their petition that they formerly furnished 90% of all the photographic work in the schools.

Now that the first year of experiment is over and after appraisal of the methods and results, it is evident and to be expected that respondents will modify their regulations and procedures to conform to their experience, with a degree of exactitude heretofore impossible. It is also to be expected that the bidding and contract documents will likewise undergo extensive revision.

The order appealed from should be affirmed.

BREITEL, J. (dissenting). Obviously it is not our province to determine how abuses in the letting of contracts for high school class photographs should be eliminated. That is the responsibility of the school authorities. But when the appropriate authorities have acted by regulation (Education Law, § 2554, subd. 13) all are bound by the regulation. That includes those who made the regulation and those who are employed, in however high a capacity, by the makers of the regulation.

The regulation in this case is quite clear. It provides as follows:

" 1. Under the direction of the principal, arrangements may be made with outside contractors for the sale to the pupils of any school, of graduation albums, class photographs, rings or pins, and similar class articles, with the understanding that local merchants be afforded a reasonable opportunity to offer their merchandise and services in connection therewith.

" 2. Appropriate provision shall be made by the principal for approval by pupil representatives in any decision affecting the choice of such articles and the terms for the purchase thereof.

" 3. The principal or other head of the school shall certify that he believes the terms of purchase are fair and reasonable and in the interest of the pupils.

" 4. No personal gain, advantage or benefit shall accrue to any teacher, supervisor or other employee or official of the Board of Education, or to any pupil in the school affected, as a result of such purchase.

" 5. No pupil shall be compelled, directly or indirectly, to purchase any such article against his wishes."

The action taken by the superintendent of schools is inconsistent with the regulation. With respect to paragraph 1, under the practice complained of, contractual arrangements were made centrally by the school authorities and not by the principal. The principal could only accept what had already been provided for and make arrangements solely for the times and places of performance. With respect to paragraph 2 there is, under the practice complained of, no participation by the pupil representatives " in any decision affecting the choice of such articles and the terms for the purchase thereof ". On the contrary, the pupils are permitted to participate in no more than arranging for the times and places for the taking of photographs. These are details just short of trivial. Indeed, the regulation was cast aside as if it were null or wholly irrelevant.

It is true that the regulation does not purport to detail every refinement of the arrangements that might be made with photographers. But the regulation did purport to lay down a handful of fixed principles. These principles have been patently violated in the procedure followed by the superintendent or his subordinates. Moreover, it is for the board of education, and not the superintendent of schools to determine whether the danger of abuse is greater at the school level or at the central level. For the time being the regulation evidently sought freedom from abuse at the decentralized level. That may have been wrong. Then the regulation should be changed. But not after it is disobeyed, but before the contrary practice is invoked.

The school authorities need not have adopted any regulation. In that event petitioners would have no remedy here. Or the school authorities could have promptly changed the regulation to conform with the practice they intended to institute. They did neither. They adopted regulations and then, or at least

those under the board of education, proceeded to disobey them. It is submitted that even in little things and even where the purpose may be well intentioned it is necessary to preserve both jealously and zealously the principle that rules made in advance, known to all, should be followed. And the schools should be the very model for the following of such a principle.

Because there is no reason to doubt that the superintendent of schools may have sound factual basis for departing from the procedure prescribed by the regulation the board of education should have opportunity to change the regulation.

Accordingly, it is recommended that the order dismissing the petition be reversed and the petition be granted, with costs, to the extent that it has not become academic by reason of the passage of time and the order should contain a stay of ninety days in order to provide sufficient opportunity to change the regulation for the next school year.

CALLAHAN, J. P., and BERGAN, J., concur with BOTEIN, J.; BREITEL, J., dissents in opinion, in which BASTOW, J., concurs.

Order affirmed, with $20 costs and disbursements to the respondents.